1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7                                 DISTRICT OF NEVADA

8                                          * * *
                                             )
9   FRANK WRIGHT,                            )
                                             )
10             Plaintiff,                    )           3:08-CV-00119-LRH-VPC
                                             )
11   v.                                      )
                                             )           ORDER
12   INCLINE VILLAGE GENERAL                 )
     IMPROVEMENT DISTRICT, and DOES 1        )
13   through XX, inclusive,                  )
                                             )
14             Defendants.                   )
     _____)

15         Presently before the court is Defendant Incline Village General Improvement District's

16  ("IVGID") Motion to Dismiss (#14[1]).  Plaintiff Frank Wright has filed an opposition (#15) to which

17  IVGID replied (#18).  Also before the court is Plaintiff's Motion for Preliminary Injunction (#2).  In

18  response, IVGID has filed a Motion to Stay or Extend Briefing Schedule on Plaintiff's Motion for

19  Preliminary Injunction (#13).  Plaintiff has filed an opposition (#16) to which IVGID replied (#17).

20  Finally, Plaintiff has also filed a Motion for Leave to File First Amended Complaint (#21).  IVGID

21  has filed an opposition (#22) to which Plaintiff replied (#23).

22  **I.    Facts and Procedural History**

23         This is a civil dispute arising out of Plaintiff's attempts to access beaches owned and

24  operated by IVGID in Incline Village, Nevada.  IVGID is a political subdivision of the State of

25

26
        _____
             [1] Refers to the court's docket number.

1   Nevada and provides water, sewer, trash, and recreational services for the communities of Incline

2   Village and Crystal Bay, Nevada.

3         In 1968, IVGID purchased two parcels of private beachfront property on Lake Tahoe.

4   These parcels are known as Burnt Cedar Beach, Incline Beach, Ski Beach, and Hermit Beach

5   (collectively, "IVGID beaches" or "beaches").  Washoe County and the State of Nevada have

6   designated the IVGID beaches as public parks and grant the beaches tax-exempt status.  The

7   beaches are fenced and have signs that prevent nonresidents and some residents from accessing the

8   beaches.  Generally, IVGID staff monitors and controls access to the beaches.

9         An IVGID ordinance provides IVGID with the authority to limit access to the beaches.

10  Ordinance 7 governs the rules and regulations concerning recreation access to IVGID facilities,

11  including the IVGID beaches.  Section 62 of Ordinance 7 provides, "Parcels annexed to the District

12  after May 30, 1968, are not eligible for District beach access as per deed restrictions listed on the

13  beach property."  (Compl. (#1), Ex. 2.)

14        Section 62 is based on a restrictive covenant in the 1968 deed conveying the beaches to

15  IVGID ("1968 covenant" or "restrictive covenant").  The covenant indicates that IVGID is to hold,

16  maintain, and use the IVGID beaches "only for the purposes of recreation by, and for the benefit of,

17  property owners and their tenants (specifically including occupants of motels and hotels) within

18  [IVGID] *as now constituted*, and, as the Board of Trustees of said District may determine, the

19  guests of such property owners, and for such other purposes as are herein expressly authorized."

20  (Compl. (#1), Ex. 1 (emphasis added).)  IVGID reads the covenant to limit access to the beaches

21  only to those individuals owning properties that were located within the boundaries of IVGID as

22  constituted in 1968 ("1968 property owners").

23        On April 30, 2008, IVGID adopted Policy and Procedure Number 136 ("Policy 136").  The

24  policy "recognizes that public expression, speech and assembly is a fundamental right."  (Pl.'s Mot.

25  File First Am. Compl. (#21), Ex. 3.)  The policy also recognizes that IVGID must balance the

26

2

1    public's right to First Amendment expression with IVGID's "significant interest[s]," including

2    assuring orderly conduct, protecting the rights of the 1968 property owners, and protecting the

3    properties' "unique environment."  (Pl.'s Mot. File First Am. Compl. (#21), Ex. 3.)  To balance

4    these interests, the policy designates "public forum areas" on IVGID properties, including the

5    IVGID beaches, where members of the public can exercise their First Amendment rights.

6         Plaintiff is a resident of Crystal Bay, Nevada, and his property lies within the boundaries of

7    IVGID.  However, IVGID annexed his property into the district after 1968.  As a result, pursuant to

8    the 1968 covenant, IVGID maintains that Plaintiff is not eligible for unrestricted access to the

9    IVGID beaches.

10        In the complaint, Plaintiff alleges that, through enforcement of the 1968 covenant and

11   Ordinance 7, IVGID has deprived him of his rights under the First and Fourteenth Amendments to

12   the United States Constitution in violation of 42 U.S.C. § 1983.  The complaint further alleges that

13   the restrictive covenant and Ordinance 7 facially violate the First and Fourteenth Amendments to

14   the United States Constitution.  Plaintiff seeks a declaration that Ordinance 7 is unconstitutional on

15   its face and as applied to Plaintiff and that the 1968 covenant is likewise unconstitutional.  Plaintiff

16   also seeks "temporary, preliminary, and permanent injunctive relief enjoining IVGID from

17   enforcing Ordinance 7, the restrictive covenant . . . and its policy of exclusion of nonresidents and

18   some residents."

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26

1    **II.    Motion to Dismiss**[2]

2        Defendant has filed a motion to dismiss pursuant to Federal Rules of Civil Procedure

3    12(b)(1) and 12(b)(7), arguing that this court lacks jurisdiction to hear Plaintiff's claims and that

4    Plaintiff has failed to join necessary and indispensable parties.  The court will address each of these

5    arguments below.

6        **A.  Subject-Matter Jurisdiction**

7        Federal courts are courts of limited jurisdiction.  *Owen Equip. & Erection Co. v. Kroger*,

8    437 U.S. 365, 374 (1978).  "A federal court is presumed to lack jurisdiction in a particular case

9    unless the contrary affirmatively appears."  *Stock West, Inc. v. Confederated Tribes of the Colville*

10   *Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989).

11       Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a claim for lack

12   of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Although the defendant is the moving

13   party in a motion to dismiss, the plaintiff is the party invoking the court's jurisdiction.  As a result,

14   the plaintiff bears the burden of proving that the case is properly in federal court.  *McCauley v.*

15   *Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001) (*citing McNutt v. General Motors Acceptance*

16   *Corp.*, 298 U.S. 178, 189 (1936)).

17       A motion to dismiss pursuant to Rule 12(b)(1) may be brought as a factual challenge or as a

18   facial challenge.  *Thornhill Publ'g Co., Inc. v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th

19   Cir. 1979).  "In a facial attack, the challenger asserts that the allegations contained in a complaint

20   are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the

21

22       [2] Although IVGID filed the motion to dismiss before filing the motion for leave to file an amended
complaint, the court considers the motion to dismiss as being addressed to Plaintiff's First Amended Complaint.

23   "Defendants should not be required to file a new motion to dismiss simply because an amended pleading was
introduced while their motion was pending.  If some of the defects raised in the original motion remain in the

24   new pleading, the court simply may consider the motion as being addressed to the amended pleading."  6
Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1476 (2d ed.

25   1990).  Because the amended complaint does not cure any of the issues raised by the motion to dismiss and
because the court grants the motion to amend below, the court will consider the motion to dismiss as being

26   addressed to the amended complaint.

1    challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal

2    jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

3          Here, IVGID asserts a factual attack on jurisdiction.  When resolving a factual attack on

4    jurisdiction, the district court may review evidence beyond the complaint.  *Id.* at 1039.  Thus, the

5    party attacking the substance of the complaint may present affidavits or other evidence properly

6    before the court.  *St. Clair v. City of Chico*, 880 F.2d 1999, 201 (9th Cir. 1989).  If the moving

7    party presents such affidavits or other evidence, the party opposing the motion must present

8    affidavits or other evidence necessary to demonstrate that the court has jurisdiction.  *Id.*  In

9    addition, the court may look beyond the complaint to matters of the public record without

10   converting the motion into a motion for summary judgment.  *White v. Lee*, 227 F.3d 1214, 1242

11   (9th Cir. 2000) (citations omitted).

12         When faced with a factual attack, "[n]o presumptive truthfulness attaches to plaintiff's

13   allegations, and the existence of disputed material facts will not preclude the trial court from

14   evaluating for itself the merits of jurisdictional claims." *Thornhill Publ'g Co., Inc.*, 594 F.2d at

15   733 (*quoting Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1977)).

16   "However, where the jurisdictional issue and substantive issues are so intertwined that the question

17   of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional

18   determination should await a determination of the relevant facts on either a motion going to the

19   merits or at trial." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983).  "[A]n action

20   should not be dismissed for lack of jurisdiction without giving the plaintiff an opportunity to be

21   heard unless it is clear the deficiency cannot be overcome by amendment." *May Dep't Store v.*

22   *Graphic Process Co.*, 637 F.2d 1211, 1216 (9th Cir. 1980).

23   ///

24   ///

25   ///

26

1      **1.**      **Standing**

2      IVGID first argues Plaintiff lacks standing to bring this action.  Lack of standing is a defect

3 in subject-matter jurisdiction and may properly be challenged under Rule 12(b)(1).  *See Bender v.*

4 *Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986).

5      Article III of the United States Constitution requires federal courts to adjudicate only actual

6 cases and controversies.  *Allen v. Wright*, 468 U.S. 737, 750 (1984).  "In essence the question of

7 standing is whether the litigant is entitled to have the court decide the merits of the dispute or of

8 particular issues."  *Id.* at 750-51 (*quoting Warth v. Seldin*, 422 U.S. 490, 498 (1975)).  Generally,

9 "the standing inquiry requires careful judicial examination of a complaint's allegations to ascertain

10 whether the particular plaintiff is entitled to an adjudication of the particular claims asserted."  *Id.*

11 at 752.  "Although standing in no way depends on the merits of the plaintiff's contention that

12 particular conduct is illegal, it often turns on the nature and source of the claim asserted."  *Warth*,

13 422 U.S. at 500.

14      The standing doctrine has a constitutional and a prudential component.  *Elk Grove Unified*

15 *Sch. Dist. v. Newdow*, 541 U.S. 1, 11 (2004).  To satisfy the constitutional component, a plaintiff

16 must meet the following three requirements: (1) the plaintiff must have suffered an injury in fact

17 that is not conjectural; (2) there must be a causal connection between the injury and the conduct

18 complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be

19 redressed by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)

20 (citations omitted).

21      In the motion to dismiss, IVGID argues Plaintiff has not suffered an injury in fact and

22 therefore has failed to meet the first constitutional standing requirement.  To satisfy the injury-in-

23 fact requirement, the plaintiff must have suffered "an invasion of a legally protected interest which

24 is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."

25 *Defenders of Wildlife*, 504 U.S. at 560 (citations and internal quotations omitted).  It is not

26

1  necessary for there to be a present injury.  *See Whitmore v. Arkansas*, 560 U.S. 149, 157-58 (1990).

2  Instead, as long as the injury is not merely conjectural or hypothetical, it is enough for the injury to

3  be imminent.  *Defenders of Wildlife*, 504 U.S. at 560.

**a.      Invasion of a Legally Protected Interest**

5        To establish an injury in fact, the plaintiff must first demonstrate that the defendant has

6  invaded a legally protected interest of the plaintiff.  *See Defenders of Wildlife*, 504 U.S. at 561.

7  However, it is important to note that for purposes of the standing inquiry, the question is not

8  whether the alleged injury rises to the level of a constitutional violation.  *See Warth v. Seldin*, 422

9  U.S. 490, 500 (1975) ("[S]tanding in no way depends on the merits of the plaintiff's contention that

10  particular conduct is illegal . . . ."); *Bell v. Hood*, 372 U.S. 678, 682 (1946) ("Jurisdiction . . . is not

11  defeated as respondents seem to contend, by the possibility that the averments might fail to state a

12  cause of action on which petitioners could actually recover.").  Instead, "where the plaintiff

13  presents a nonfrivolous legal challenge, alleging an injury to a protected right such as free speech,

14  the federal courts may not dismiss for lack of standing on the theory that the underlying interest is

15  not legally protected."  *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1093 (10th Cir.

16  2006).

17        Here, Plaintiff bases his complaint on IVGID's alleged denial of his First Amendment rights

18  to freedom of speech, freedom of assembly, and freedom of association.[3]  A government's denial of

19  access to a public space can infringe a plaintiff's First Amendment rights. *See Carey v. Brown*, 447

20  U.S. 455, 461 (1980) (citations omitted) ("Streets, sidewalks, parks, and other similar public places

21  are so historically associated with the exercise of First Amendment rights that access to them for

22  the purposes of exercising such rights cannot constitutionally be denied broadly and absolutely.")

23  Accordingly, in alleging the denial of his right to access the IVGID beaches and in being denied

24

25        [3] As both parties only discuss Plaintiff's First Amendment claims, the parties appear to agree that
26  Plaintiff bases his claims under the Fourteenth Amendment upon the denial of his First Amendment rights.

7

access to the beaches, Plaintiff has demonstrated the denial of a legally protected interest sufficient to satisfy the standing inquiry.

Nonetheless, IVGID maintains that Plaintiff has not suffered an injury in fact because "there is no evidence that Plaintiff ever made a request to IVGID for permission to enter any of the subject properties to engage in First Amendment activities." (Def.'s Mot. Dismiss (#14) at 6.)  However, Plaintiff alleges that he seeks access to the beaches to "discuss topics of political and social importance with his neighbors and fellow IVGID members."  (Compl. (#1) ¶ 11.)

It is undisputed that Plaintiff has requested, and IVGID has denied, Plaintiff access to the beaches.  Inherent in IVGID's denial of Plaintiff's access to the IVGID beaches is Plaintiff's loss of an opportunity to interact and congregate with members of his community.  Plaintiff's requests to access the IVGID beaches therefore included clear First Amendment implications, and IVGID's denial of Plaintiff's access to the allegedly public beaches is a harm that is actual, concrete, and particularized.  IVGID's rationale for imposing this harm on Plaintiff, and whether IVGID knew that Plaintiff sought access to the beaches to exercise his First Amendment rights, does not affect the practical effect of IVGID's denial of Plaintiff's access to the beaches.[4]  As a result, the court finds that when IVGID denied Plaintiff access to the IVGID beaches, Plaintiff suffered an injury in fact to a legally cognizable interest sufficient to give him standing in this case.

///

---

[4] The court notes that Plaintiff has also provided evidence indicating that IVGID was aware of the constitutional nature of Plaintiff's requests to access the beaches.  For example, in a letter addressed to IVGID, Plaintiff states, "As a tax-paying member of this community I have a constitutional right to access and use these facilities." (Pl.'s Opp. Mot. Dismiss (#15), Ex. 15.)  The letter further states that IVGID "cannot stop a citizen of a community from accessing public land" and that he "intend[ed] to bring [his] family and friends to the [IVGID beaches] during the summer months of 2007." (Pl.'s Opp. Mot. Dismiss (#15), Ex. 15.)  In addition, on August 2, 2005, Plaintiff and a neighbor, Ronald Code, were refused entrance to the IVGID beaches.  Mr. Code subsequently wrote a letter to IVGID stating, "[His] wish was to see, meet and be with other members of [the] community, to enjoy the parks, and to possibly engage in discussions with friends and neighbors." The letter states that IVGID's police "directly violates [Mr. Code's] First Amendment rights."  (Pl.'s Opp. Mot. Dismiss (#15), Ex. 9.)  The letter further indicates that Plaintiff accompanied Mr. Code when he sought access to the beaches.

1

### b.     Imminent Injury

2

IVGID further argues that Plaintiff has failed to meet the standing doctrine's constitutional

3

injury-in-fact requirement because Plaintiff is not faced with an imminent injury that is more than

4

speculative or hypothetical.  A plaintiff seeking prospective relief must show that he or she is

5

"immediately in danger of sustaining some direct injury."  *City of Los Angeles v. Lyons*, 461 U.S.

6

95, 101-02 (1983) (citation omitted).  Thus, even if a plaintiff has suffered an injury in the past, the

7

plaintiff does not have standing to seek prospective relief unless he or she faces the immediate

8

threat of repeated injury.  *Nelsen v. King County*, 895 F.2d 1248, 1251 (9th Cir. 1990)

9

IVGID argues Plaintiff does not face an imminent injury because "Plaintiff cannot

10

demonstrate that he would be subject to prosecution, or the threat of prosecution, should he seek to

11

engage in First Amendment activities on the properties in question."  (Def.'s Mot. Dismiss (#14) at

12

7.)  However, "[p]laintiffs need not suffer or risk suffering prosecution under a statute to

13

demonstrate injury from it."  *S.O.C., Inc. v. County of Clark*, 481 F. Supp. 2d 1122, 1126 (D. Nev.

14

2007) (*citing Culinary Workers Union, Local 226 v. Del Papa*, 200 F.3d 614, 617-18 (9th Cir.

15

1999)).  Instead, plaintiffs can meet the standing requirement "even [if] a prosecution is remotely

16

possible."  *Id.* (*quoting Culinary Workers Union*, 481 F.3d at 618).

17

Moreover, in the First Amendment context, "it is sufficient for standing purposes that the

18

plaintiff intends to engage in a course of conduct arguably affected with a constitutional interest

19

and that there is a credible threat that the challenged provision will be invoked against the

20

plaintiff."  *ACLU of Nevada v. Heller*, 378 F.3d 979, 984 (9th Cir. 2004) *(quoting LSO, Ltd. v.

21

Stroh*, 205 F.3d 1146, 1154-55 (9th Cir. 2000)).  Indeed, "when the threatened enforcement effort

22

implicates First Amendment rights, the inquiry tilts dramatically toward a finding of standing."

23

*LSO*, 205 F.3d at 1155 (citation omitted).

24

In evaluating the likelihood of a claimed threat of enforcement, the court considers the

25

following three factors: (1) whether the plaintiff has articulated a "concrete plan" to violate the law

26

9

1   in question; (2) whether the prosecuting authorities have communicated a specific warning or

2   threats to initiate proceedings against the plaintiff; and (3) the history of past prosecution or

3   enforcement under the challenged regulation.  *Thomas v. Anchorage Equal Rights Comm'n*, 220

4   F.3d 1134, 1139 (9th Cir. 2000) (en banc) (*citing San Diego County Gun Rights Comm'n v. Reno*,

5   98 F.3d 1121, 1126-27 (9th Cir. 1996)).  Here, applying these three factors, the court concludes that

6   plaintiff has demonstrated a genuine threat of prosecution sufficient to satisfy the injury-in-fact

7   component of the standing inquiry.

8          First, Plaintiff has demonstrated a "concrete" plan to violate Ordinance 7.  He has

9   repeatedly requested and continues to seek access to the IVGID beaches, and IVGID has repeatedly

10  advised Plaintiff that he cannot access the beaches.  In the complaint, he alleges he has not entered

11  the IVGID beaches "out of fear of prosecution, and the possibility that he will be arrested, charged,

12  and jailed for trespassing pursuant to NRS § 207.200."  (Compl. (#1) ¶ 26.)  Plaintiff's extended

13  history of attempting to access the beaches, as well as Plaintiff's allegations, indicate that he will

14  continue to pursue access to the beaches.

15         Second, Plaintiff has provided evidence indicating it is at least "remotely possible" that if he

16  were to violate the ordinance and attempt to enter the IVGID beaches, he could be subject to

17  prosecution.  IVGID responds that it has no intent to prosecute Plaintiff if he seeks to access the

18  beaches for First Amendment purposes.  In particular, it notes the effect of Policy 136, which

19  IVGID passed on April 30, 2008.  In relevant part, Policy 136 designates certain areas on the

20  beaches where the general public can exercise their First Amendment rights.  IVGID maintains that

21  this policy is a clear indication of its lack of intention to prosecute individuals who access the

22  beaches for First Amendment purposes.

23         IVGID's argument fails because Plaintiff continues to seek access to the entire beach area.

24  Plaintiff may violate both Policy 136 and Ordinance 7 if he attempts to access areas outside of the

25  designated "First Amendment zones."  The enactment of Policy 136 does not affect the likelihood

26

that IVGID will seek to enforce both ordinances should Plaintiff seek access to the non-designated

areas of the beaches.  As a result, Plaintiff continues to face the threat of prosecution should he

seek to access the beaches for First Amendment purposes.

Third, although there is no evidence of a direct, formal enforcement action against a citizen

who has attempted to enter the beaches, enforcement history alone is not dispositive.  *See LSO*, 205

F.3d at 1155 (citations omitted).  Plaintiff and others have made previous efforts to access the

beaches and have been denied access.  Moreover, both parties have presented evidence of

inconsistent statements concerning IVGID's and local law enforcement's response should Plaintiff

attempt to force entry into the beaches.  In light of Plaintiff's repeated attempts to access the

beaches and IVGID's repeated denial of those requests, the lack of a prior, formal enforcement

action is not dispositive here.

Because of the considerations discussed above, the court finds that Plaintiff has satisfied the

imminency requirement.  Accordingly, the court finds that Plaintiff has demonstrated he has

suffered an injury in fact sufficiently imminent and real to satisfy the first prong of the

constitutional standing requirement.  The court likewise finds that Plaintiff has met the remaining

two constitutional standing requirements.  However, because IVGID does not challenge Plaintiff's

satisfaction of these requirements, an in-depth discussion of their application is not necessary.

### c.    Overbreadth Doctrine

Finally, IVGID argues that Plaintiff cannot rely on the overbreadth doctrine to overcome his

standing hurdles.  A plaintiff can bring a facial constitutional challenge in two ways.  First, a

plaintiff seeking to vindicate his own rights may argue that a government regulation is

"unconstitutionally vague or . . . impermissibly restricts a protected activity."  *Santa Monica Food*

*Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1033 (9th Cir. 2006) (citations omitted).

Second, a plaintiff whose own speech or expression is not protected can challenge a statute on its

face because the statute also threatens the First Amendment rights of others not before the court.

*Id.* (citations omitted); *see also Young v. City of Simi Valley*, 216 F.3d 807, 815 (9th Cir. 2000) (citations omitted).  This second type of challenge "serves to overcome what would otherwise be a plaintiff's lack of standing."  *Nunez v. City of San Diego*, 114 F.3d 935, 949 (9th Cir. 1997).  "Technically, the overbreadth doctrine does not apply if the parties challenging the statute engage in the allegedly protected expression."  *Id.* (*citing Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 504 (1985)).

Here, Plaintiff maintains that the ordinance and the covenant, facially and as applied, violate his own constitutionally protected rights.  Plaintiff does base his challenges on the violation of the rights of others not before the court.  Thus, Plaintiff's facial challenges are not in the form of an overbreadth challenge to a statute that violates the rights of others.  Accordingly, Plaintiff does not need to rely upon the overbreadth standing exception.  As discussed above, Plaintiff has established that he has standing to bring the present challenges on his own behalf.

### 2.    Ripeness

IVGID also seeks to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(1) because Plaintiff's claims are not ripe for judicial review.  The ripeness doctrine is designed to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements."  *Thomas*, 220 F.3d at 1138 (citation omitted).  Like other justiciability doctrines, the ripeness doctrine derives from both Article III limitations on judicial power and from "prudential reasons for refusing to exercise jurisdiction."  *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (*quoting Reno v. Catholic Social Services, Inc.*, 509 U.S. 43, 57 n.18 (1993)).  Thus, the ripeness inquiry contains both a constitutional and a prudential component.  *Thomas*, 220 F.3d at 1138.

The constitutional component of the ripeness inquiry is similar to the standing doctrine's injury-in-fact requirement.  *Thomas*, 220 F.3d at 1138.  Indeed, in "measuring whether the litigant has asserted an injury that is real and concrete rather than speculative and hypothetical, the ripeness

12

inquiry merges almost completely with standing." *Id.* (citation omitted).  In particular, where a court has found a reasonable threat of enforcement under the standing analysis, the court's decision effectively "dispenses with any ripeness problem."  *LSO*, 205 F.3d at 1156 (citation omitted).

Here, IVGID rests its ripeness challenge solely on its belief that Plaintiff has not suffered an injury in fact.  However, the court has concluded that Plaintiff has suffered an injury in fact sufficient to give him standing in this case.  As a result, the court likewise finds that Plaintiff has suffered an injury making his clam ripe for judicial review.[5]

**B.  Failure to Join a Necessary and Indispensable Party**[6]

The second basis upon which IVGID seeks to dismiss Plaintiff's claims is under Federal Rule of Civil Procedure 12(b)(7) for failure to join a necessary and indispensable party.  In particular, IVGID maintains that the current owners of the 7,785 properties that were within the 1968 boundaries of IVGID are necessary and indispensable parties.

Determining whether a party is necessary and indispensable under Rule 19 involves a three-step inquiry.  *EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005) (citations omitted).  First, under Rule 19(a), the court determines whether a party is "necessary."  *Id.*  If the court finds that the absent party is a necessary party, the court must then determine whether joinder of the party is feasible.  *Id.*  Finally, if joinder is not feasible, the court determines whether the case can proceed without the absent party or whether the absent party is an "indispensable" party such that the court must dismiss the action.  *Id.*   "The inquiry is a practical one and fact specific, and is designed to

_____

[5] The court also finds the case fit for judicial resolution under the prudential component of the ripeness doctrine. However, because IVGID's ripeness challenge is limited to the constitutional component and because of the facts and circumstances presented here, an in-depth discussion of the prudential component is not necessary.

[6] The 2007 amendment to Rule 19 changed the language of the rule, eliminating the term "indispensable" and replacing "necessary" with "required." However, the changes were intended to be stylistic only. Fed. R. Civ. P. 19 advisory committee notes; *see also Republic of the Philippines v. Pimentel*, 128 S. Ct. 2180, 2184 (2008).  Because the traditional terms are terms of art used by courts and commentators and because the parties have used the traditional terms in their briefs, for clarity the court does the same here.

1  avoid the harsh results of rigid application." *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th
2  Cir. 1990).

3  **1.      The 1968 Property Owners' Interest**

4        To determine whether the 1968 property owners are necessary and indispensable parties
5  under Rule 19, it is helpful to clarify the nature of their interest in the dispute.  As noted, Plaintiff
6  brings both facial and as-applied challenges to Ordinance 7 and the 1968 covenant.  In relevant
7  part, Ordinance 7 provides, "Parcels annexed to [IVGID] after May 30, 1968, are not eligible for
8  [IVGID] beach access as per deed restrictions listed on the beach property."  (Def.'s Mot. Dismiss
9  (#14), Ex. B.)  Thus, any rights that the property owners have relating to Ordinance 7 are based on
10 restrictions in the 1968 deed.

11       The parties to the 1968 deed are the Village Development Company, the grantor, and
12 IVGID, the grantee.  Although the 1968 property owners are not signatories to the deed, the deed
13 nonetheless includes provisions relating to them.  In particular, the deed provides for the following:
14 (1) a restrictive covenant whereby IVGID is to hold, maintain and use the IVGID beaches "only for
15 the purpose of recreation by, and for the benefit of, property owners . . . within the [IVGID] as now
16 constituted"; (2) the owners of the 1968 property can enforce the covenant; and (3) an easement for
17 the benefit of the 1968 property owners to enter the IVGID beaches and use them for recreational
18 activities.  (Compl. (#1), Ex. 1.)

19       Although the 1968 property owners are not signatories to the deed, they are intended third-
20 party beneficiaries.  Whether an individual is an intended third-party beneficiary turns on the
21 parties' intent, "gleaned from reading the contract as a whole in light of circumstances under which
22 it is entered.  *Canfora v. Coast Hotels & Casinos, Inc.*, 121 P.3d 599, 605 (Nev. 2005) (*quoting*
23 *Jones v. Aetna Cas. and Sur. Co.*, 33 Cal. Rptr. 2d 291, 296 (Ct. App. 1994)).  "There must clearly
24 appear a promissory intent to benefit the third party, and ultimately it must be shown that the third
25 party's reliance thereon is foreseeable."  *Lipshie v. Tracy Inv. Co.*, 566 P.2d 819, 824-25 (Nev.

26

14

1    1977) (citations omitted).

2        Here, the unambiguous language of the 1968 deed indicates that the 1968 property owners

3    are intended third-party beneficiaries of the restrictive covenant.  The deed expressly states that

4    IVGID is to hold, maintain, and use the IVGID beaches "only for the benefit of" the 1968 property

5    owners.  Further, the deed expressly provides that the 1968 property owners can enforce the

6    covenant.  Thus, there is a clear promissory intent to benefit the 1968 property owners, and the

7    property owners' reliance on the covenant is foreseeable.  Indeed, the covenant is and undoubtedly

8    has always been a valued property right of the original 1968 property owners and their successors.

9    As a result, the court finds that the 1968 property owners are intended-third party beneficiaries to

10   the covenant.

11                    **2.    The Property Owners as Necessary Parties**

12       The first step in the joinder analysis is to determine whether the property owners are

13   necessary parties to Plaintiff's claims.  Under Rule 19(a), the property owners are necessary parties

14   and must be joined if (1) the court cannot grant complete relief among the existing parties or (2) the

15   property owners claim an interest relating to the subject of the litigation.  Fed. R. Civ. P. 19(a).  If

16   the property owners claim an interest in the litigation, they are necessary to the action only if

17   disposition of the action without the parties would (1) impair or impede their ability to protect their

18   interest or (2) leave an existing party subject to a substantial risk of incurring double, multiple, or

19   otherwise inconsistent obligations because of the claimed interest.  Fed. R. Civ. P. 19(a).

20                    **a.    The Restrictive Covenant**

21       The court first considers whether the 1968 property owners are necessary parties to

22   Plaintiff's challenge to the restrictive covenant.  Under Rule 19, the first step is to determine

23   whether the court can grant complete relief in the property owner's absence.  Fed. R. Civ. P.

24   19(a)(1)(A).  "This factor is concerned with consummate rather than partial or hollow relief as to

25   those already parties, and with precluding multiple lawsuits on the same cause of action."  *Disabled*

26
                                            15

*Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 879 (9th Cir. 2004) (*quoting Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir. 1983)).  The "complete relief" factor "is concerned only with relief as between the persons already parties, not as between a party and the absent person whose joinder is sought."  *Eldredge v. Carpenters 46 N. Cal. Counties Joint Apprenticeship and Training Comm.*, 662 F.2d 534, 537 (9th Cir. 1981) (citations and internal quotations omitted).  In making its determination, the court asks whether the "absence of the party would preclude the district court from fashioning meaningful relief as between the parties."  *Id.*

In determining whether the court can grant complete relief in the absence of the 1968 property owners, two Ninth Circuit decisions guide the court's analysis.  First, in *Dawavendewa v. Salt River Project Agric. Improvement Dist.*, the Ninth Circuit found the Navajo Nation to be a necessary party because the court could not grant complete relief in the Nation's absence.  276 F.3d 1150 (9th Cir. 2002).  The Navajo Nation had leased land to the defendant, who operated a business on the reservation.  *Id.* at 1153.  The lease included a provision whereby the defendant was required to extend employment preferences to qualified local Navajos.  *Id.*  The plaintiff, a member of the Hopi Tribe, sought to enjoin the defendant from enforcing the lease provision, but did not name the Nation as a party.  *Id.* at 1153-54.

In finding that it could not grant complete relief in the Nation's absence, the court reasoned that the injunction sought would bind only the defendant and the plaintiff, not the Nation.  *Id.* at 1155.  As a result, even if the court enjoined the defendant from enforcing the lease provision, the Nation could continue to attempt to enforce the provision.  *Id.*  The court noted that if the defendant were to ignore the injunction, the plaintiff would not receive the relief he sought.  *Id.*  At the same time, if the defendant were to comply with the injunction, the Navajo Nation would likely take action against the defendant under the lease.  *Id.*  The court concluded that, if the court granted Plaintiff an injunction, the defendant would be "between the proverbial rock and a hard place –

16

comply with the injunction . . . or comply with the lease." *Id.* at 1156.  If the defendant declined to abide by the injunction and instead complied with the lease, the plaintiff would not be afforded complete relief.  As a result, the Nation was a necessary party.  *Id.*

Similarly, in *EEOC v. Peabody Western Coal Co.*, the Ninth Circuit also found that the Navajo Nation was a necessary party because the court could not grant complete relief in its absence.  400 F.3d 774, 780 (9th Cir. 2005).  In that case, the Navajo Nation was a party to the challenged lease with Defendant Peabody.  *Id.*  The EEOC sought declaratory, injunctive, and monetary relief, but did not join the Navajo Nation as a party.  *Id.*  The court found that while the court could award EEOC monetary damages without the Nation's participation, "declaratory and injunctive relief could be incomplete unless the nation is bound by res judicata."  *Id.*  The court stated, "[i]f the EEOC is victorious in this suit but the nation has not been joined, the Nation could possibly initiate further action to enforce [the provision in the lease] against Peabody, even though that preference would have been held illegal in this litigation."  *Id.*  Accordingly, the court found that the Navajo Nation was a necessary party.

The above-cited cases indicate that where a plaintiff seeks injunctive or declaratory relief and a third-party has an enforceable interest in the subject matter of the dispute, the court cannot grant complete relief in the third party's absence.  Accordingly, here, the court finds that the 1968 property owners are necessary parties to Plaintiff's claims challenging the restrictive covenant because if Plaintiff is successful in acquiring injunctive and declaratory relief, he will not be afforded complete relief.  As in the above-cited cases, a judgement against IVGID enjoining it from enforcing the covenant would not be binding against the property owners, who could continue to seek enforcement of their property rights under the restrictive covenant against IVGID.  If IVGID were to ignore the injunction, Plaintiff would not be afforded the relief he seeks, and if IVGID were to comply with the injunction, the property owners would be likely to take action against IVGID to enforce their rights under the covenant.  Thus, even if Plaintiff is successful in this suit, he is not

17

assured complete relief.  As a result, the 1968 property owners are necessary parties under Rule

19(a)(1)(A) to Plaintiff's claims challenging the restrictive covenant.

The court also finds that the property owners are necessary parties to the action under the

second prong of Rule 19(a).[7]  Under Rule 19(a)(1)(B)(I) a party is necessary if the absentee "claims

an interest relating to the subject of the action" and disposing of the action without joining the

absent party would impair or impede that party's ability to protect its interest.  Fed. R. Civ. P.

19(a)(1)(B)(I).

"[N]o procedural principle is more deeply imbedded in common law than that, in an action

to set aside a lease or contract, all parties who may be affected by the determination of the action are

indispensable."  *Dawavendewa*, 276 F.3d at 1156 (*quoting Lomayaktewa v. Hathaway*, 520 F.2d

1324, 1325 (9th Cir. 1975)).  Plaintiff's challenge to the restrictive covenant directly threatens to

impair the property owners' interest in the covenant.  Although the 1968 property owners are not

named parties to the 1968 deed, as noted above, they are intended third-party beneficiaries of the

---

[7] The court recognizes that some cases hold that joinder under Rule 19(a)(1)(B) is "contingent . . . upon an initial requirement that the absent party *claim* a legally-protected interest relating to the subject matter of the action," and "where a party is aware of an action and chooses not to claim an interest, the district court does not err by holding that joinder [is] 'unnecessary.'"  *Altmann v. Republic of Aus.*, 317 F.3d 954, 971 (9th Cir. 2002) (emphasis in original) (*citing McDonnell Douglas*, 705 F.2d at 1043) ("Subparts (i) and (ii) are contingent . . . upon an initial requirement that the absent party claim a legally-protected interest relating to the subject matter of the action."); *see also Fed. Deposit Ins. Corp. v. County of Orange*, 262 F.3d 1014, 1023 (9th Cir. 2001) ("[The defendant] cannot claim that the [absent parties] have a legally-protected interest in the action unless the [absent parties] themselves claim that they have such an interest."); *United States v. Bowen*, 172 F.3d 682, 689 (9th Cir. 1999) ("[I]t is inappropriate for one defendant to attempt to champion the absent party's interests . . . .");  *Fanning v. Group Health Coop.*, 2008 U.S. Dist. LEXIS 41042, *5 (W.D. Wash. May 21, 2008) (finding that because Rule 19(a)(1)(B) "allows a forced joinder of an outside party only upon the impetus of that outside party," the absent party who had not claimed an interest or sought to join the suit could not be a required party under the rule).

Here, the property owners themselves have not come forward and claimed a direct interest in this action.  However, it is not clear that the property owners are even aware of the pending litigation.  Because the court has found the property owners necessary parties under the first prong of Rule 19(a), they will soon have notice of the action and will be able to assert their rights accordingly.  Withholding a discussion of the property owners's interests under Rule 19(a)(1)(B) at this time would require unnecessarily strict conformance to Rule 19(a), which is intended to be flexible in its application, and would likely result in unnecessary delay and duplicative arguments.

deed.  An intended third-party beneficiary generally has the authority to enforce a contract even if the beneficiary is not a signatory.  *See Gibbs v. Giles*, 607 P.2d 118, 120 (Nev. 1980). ("Where a contract contains a promise for the benefit of a stranger to the contract, the third-party beneficiary has a direct right of action against the promisor.") (citations omitted).  Thus, as intended third-party beneficiaries, the property owners have the authority to enforce the covenant.  Because Plaintiff's claim has the potential to decimate the property owner's rights under the covenant, the court finds that the property owners are necessary parties under Rule 19(a)(1)(B)(ii).

Finally, any disposition in the property owner's absence threatens to leave IVGID subject to a substantial risk of incurring multiple or inconsistent obligations.  As discussed above, if this court were to declare the restrictive covenant invalid and enjoin its enforcement, an injunction would not bind the property owners, who could continue to seek enforcement of the covenant.  Under this scenario, IVGID would be faced with the mutually exclusive alternatives of choosing not to comply with the court's injunction or be faced with an action by the property owners to enforce the covenant.  IVGID is therefore subject to a substantial risk of incurring double, multiple, or inconsistent obligations.  As a result, the court finds that the property owners are also necessary parties under Rule 19(a)(1)(B)(ii).

Nonetheless, even if a party has a legally protected interest in an action, if an existing party can adequately represent the absent party's interest, then the absent party is not a necessary party under Rule 19(a)(1)(B).  *See Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1992) ("[I]mpairment may be minimized if the absent party is adequately represented in the suit . . . .").  The court considers the following factors in determining whether an existing party may adequately represent the interests of an absent party: (1) the present party will undoubtedly make all of the absent party's arguments; (2) the present party is capable and willing to make the absent party's arguments; and (3) the absent party would not offer any necessary elements that the present parties would neglect.  *Id.*

Here, it is not clear that IVGID will make all of the property owners' arguments.  IVGID, as a public entity, represents both the interests of the 1968 property owners and the interests of the approximately 400 property owners later annexed to the district, including Plaintiff.  In this case, these interests are in direct conflict, as the 1968 property owners presumably would seek to uphold the ordinance and the covenant, and Plaintiff seeks to strike it down.  Further, the property owners likely have individual interests in upholding the ordinance and the covenant that IVGID is unlikely to raise.  Accordingly, the court finds that IVGID cannot adequately represent the property owners' legally protected interest in the restrictive covenant.

**b.      Ordinance 7**

IVGID also argues the property owners are necessary parties to Plaintiff's claims challenging Ordinance 7.  Plaintiff also challenges Ordinance 7 facially and as applied.  In relevant part, Ordinance 7 provides, "Parcels annexed to [IVGID] after May 30, 1968, are not eligible for [IVGID] beach access as per deed restrictions listed on the beach property."  (Def.'s Mot. Dismiss (#14), Ex. B.)

Unlike Plaintiff's challenge to the covenant, the resolution of Plaintiff's challenge to Ordinance 7 does not involve an inquiry into the validity of a contract to which the property owners possess a legally enforceable interest.  Thus, Plaintiff's challenge to the ordinance does not implicate the 1968 property owners' rights under the covenant, which the property owners will continue to be able to enforce.  Otherwise stated, if Ordinance 7 is successfully challenged by Plaintiff, it does not appear at this stage that Plaintiff will be entitled to access the IVGID beach properties.  Accordingly, with regard to Ordinance 7, the court finds it can (1) grant complete relief in the property owners' absence, (2) determine the validity of the ordinance without harming the property owners' ability to protect their interests, and (3) determine the validity of the ordinance without subjecting IVGID to a substantial risk of incurring multiple or inconsistent obligations.

///

20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

### c.      Public Rights Exception

Plaintiff argues that even if the property owners are necessary parties, this action falls under the "public rights" or "public interest" exception to Rule 19's joinder requirements.  "Under this exception, even if [the absent party is a] necessary party, [the absent party is] not deemed indispensable, and, consequently, dismissal is not warranted*. Kescoli v. Babbitt*, 101 F.3d 1304, 1311 (9th Cir. 1996) (*citing Makah Indian Tribe v. Verity*, 910 F.2d 555, 559 n.6 (9th Cir. 1990)).  Generally, to fall within the public rights exception, "the litigation must transcend the private interests of the litigants and seek to vindicate a public right." *Id.* (*citing Kickapoo Tribe of Indians v. Babbitt*, 43 F.3d 1491, 1500 (D.C. Cir. 1995)).   Further, for the exception to apply, the litigation must not "destroy the legal entitlements of the absent parties." *Id.* (citations omitted) (finding the public rights exception inapplicable because rights of absent tribe members under lease agreements "could be significantly affected" if the action proceeded in the tribes' absence); *see also Wilbur v. Locke*, 423 F.3d 1101, 1115 (9th Cir. 2005) (finding the exception inapplicable because the absent tribe would "lose valuable contractual benefits if the Compact was held invalid"); *Kettle Range Conservation Group v. U.S. Bureau of Land Mgmt.*, 150 F.3d 1083, 1087 (9th Cir. 1998) (finding the exception inapplicable where plaintiffs sought rescission of contract under which land had been transferred to absent parties because an order declaring the contract invalid would destroy the absent parties' legal entitlements).

Here, the court finds the public rights exception inapplicable.  As discussed above, if the court finds the restrictive covenant unenforceable, the property owners' interest in the covenant will be destroyed.  Accordingly, the court concludes that the threat to the property owners' interest in the restrictive covenant precludes application of the public rights exception.

### 3.      Feasibility of Joinder

Having determined that the property owners are necessary parties to Plaintiff's claim challenging the restrictive covenant, the court next considers whether the property owners can

21

1   feasibly be joined as parties.  Under Rule 19, joinder is feasible where the absent party is subject to

2   service of process, and the absent party's joinder will not destroy subject matter jurisdiction.  Fed.

3   R. Civ. P. 19(a)(1).

4        The parties have failed to make more than conclusory arguments concerning whether the

5   property owners can feasibly be joined.  It appears that their joinder would not deprive the court of

6   subject matter jurisdiction.  However, it also appears unlikely that over 7,800 property owners can

7   feasibly be joined and served in this action.  As this issue has not been addressed, the court will

8   allow Plaintiff to present briefing and argument on this question as hereafter identified.

9        Should it appear that joinder of the property owners is feasible, pursuant to Rule 19(a)(2),

10   the court will order the property owners to be made parties to the action.  If it appears that joinder of

11   the property owners is not feasible, the court must then determine whether the property owners are

12   indispensable parties under Rule 19(b).

13        Under Rule 19(b), "If a person who is required to be joined if feasible cannot be joined, the

14   court must determine whether, in equity and good conscience, the action should proceed among the

15   existing parties or should be dismissed."  Fed. R. Civ. P. 19(b).  In making its determination, the

16   court considers the following factors: (1) the extent to which a judgment rendered in the person's

17   absence might prejudice that person or existing parties; (2) the extent to which any prejudice could

18   be lessened or avoided by shaping the relief; (3) whether a judgment rendered in the person's

19   absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the

20   action were dismissed for non-joinder.  Fed. R. Civ. P. 19(b).

21        The court has concluded that the property owners possess an important and protected

22   interest in the restrictive covenant.  In light of the property owners' interest, the likelihood that

23   joinder of the property owners will not be feasible, and the relevant factors under Rule 19(b), it

24   appears to the court at this time that the property owners are likely to be indispensable to Plaintiff's

25   claims challenging the covenant.  Nonetheless, the parties have failed to make any arguments

26                                          22

1  concerning whether the property owners are indispensable.  As such, the court will withhold its

2  decision and will authorize the supplemental briefing to include this issue.

3  **III.     Motion for Leave to File First Amended Complaint**

4          Following IVGID's adoption of Policy 136, Plaintiff filed a motion for leave to file a first

5  amended complaint (#21).  Plaintiff seeks to amend his complaint to challenge the "enactment and

6  enforcement of Policy 136 because it is an unconstitutional time, place, and manner restriction on

7  speech in violation of the protections of the First Amendment."  (Pl.'s Mot. File First Am. Compl.

8  (#21) at 3.)  In addition, Plaintiff alleges that the "Policy and Procedure violates the Equal

9  Protection Clause of the Fourteenth Amendment because it is a regulatory classification which is

10  based on a suspect class and implicates fundamental rights."  (Pl.'s Mot. File First Am. Compl.

11  (#21) at 3.)

12          Rule 15(a) provides that a party may amend a pleading once "as a matter of course" before a

13  responsive pleading is served.  Fed. R. Civ. P. 15(a).  If a responsive pleading has been filed, the

14  "party may amend the party's pleading only by leave of court or by written consent of the adverse

15  party."  Fed. R. Civ. P. 15(a)(2).  Leave to amend shall be freely given when justice so requires.

16  Fed. R. Civ. P. 15(a)(2); *Jones v. Bates*, 127 F.3d 839, 847 n.8 (9th Cir. 1997); *DCD Program, Ltd.*

17  *v. Leighton*, 833 F.2d 183, 185 (9th Cir. 1987).  "In exercising its discretion, 'a court must be

18  guided by the underlying purpose of Rule 15 – to facilitate a decision on the merits rather than on

19  the pleadings or technicalities.'"  *DCD Program*, 833 F.2d at 186 (*quoting United States v. Webb*,

20  655 F.2d 977, 979 (9th Cir. 1981)).  Rule 15's policy of favoring amendments to pleadings should

21  be applied with "extreme liberality" insofar as the motion to amend is not sought in bad faith, does

22  not cause the opposing party undue delay, does not cause the opposing party undue prejudice, and

23  does not constitute an exercise in futility.  *Id.* at 186.  The party opposing the amendment bears the

24  burden of showing prejudice.  *Id.* at 187 (*citing Beeck v. Aqua Slide' N' Dive Corp.*, 562 F.2d 537,

25  540 (8th Cir. 1977)).

26

1    The factors of bad faith, undue delay, and undue prejudice are not at play in the present case.

2    Indeed, IVGID only challenges Plaintiff's attempt to add the claims challenging Policy 136 on the

3    ground that an amendment to include such claims would be futile.  "Futility of amendment can, by

4    itself, justify the denial of a motion for leave to amend."  *Bonin v. Calderon*, 59 F.3d 815, 846 (9th

5    Cir. 1995).  However, "[w]here underlying facts or circumstances of a case 'may be a proper subject

6    of relief, [a plaintiff] ought to be afforded an opportunity to test his claims on the merits.'"  *DCD*

7    *Programs*, 833 F.2d at 188 (*quoting Foman v. Davis*, 371 U.S. 178, 182 (1962)).

8    IVGID's arguments concerning the futility of amendment mirror the arguments in IVGID's

9    motion to dismiss.  Thus, IVGID argues that the amendment is futile for the following reasons: (1)

10   Plaintiff lacks standing to challenge Policy 136; (2) Plaintiff's claims are not ripe for judicial

11   review; and (3) Plaintiff has failed to join a necessary and indispensable party.  Because the court

12   has extensively discussed the law applicable to each of these arguments, the court will not reiterate

13   the law here and will limit itself to applying the law to each of IVGID's arguments.

14       **A.  Standing**

15   IVGID first argues the proposed amendment would be futile because Plaintiff lacks standing

16   to challenge the constitutionality of Policy 136.  "Where a proposed amendment leaves the Court

17   without subject matter jurisdiction to hear the claims presented, it is futile."  *Paramount Pictures*

18   *Corp. v. RePlay TV*, 298 F. Supp. 2d 921, 927 (C.D. Cal. 2004).  Lack of standing is a defect in

19   subject-matter jurisdiction.  *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986).

20   The court finds that Plaintiff faces an imminent injury in fact to a legally protected interest

21   that is fairly traceable to the challenged policy sufficient to give him standing in this case.  As

22   discussed above, Plaintiff has a legally protected interest in vindicating his First Amendment rights.

23   In addition, Plaintiff has demonstrated that he has suffered an injury in fact to this legally protected

24   interest.  Specifically, Plaintiff has provided evidence indicating that he has requested and been

25   denied unrestricted access to the beaches.  (Pl.'s Reply (#23), Exs. 3, 5, 7.)  In response, IVGID' s

26

24

attorney has sent Plaintiff letters stating that Policy 136 does not afford Plaintiff the unrestricted access to the beaches that Plaintiff seeks.  (Pl.'s Reply (#23), Exs. 4, 6.)  Finally, IVGID has indicated its commitment to enforcing Policy 136 against Plaintiff should he engage in the requested activities.  Thus, Plaintiff faces the same imminent threat of enforcement as discussed in earlier sections.  Accordingly, the court finds that Plaintiff has standing to challenge Ordinance 136.

As discussed above, Plaintiff does not need to rely on the overbreadth doctrine to give him standing in this case.  As noted, the overbreadth doctrine provides an exception to traditional standing requirements, permitting a plaintiff whose own speech is not protected to challenge a statute on its face because it threatens the First Amendment rights of others not before the court. *See Santa Monic Food Not Bombs*, 450 F.3d at 1033.  Here, Plaintiff himself has engaged in the allegedly protected activity.  Thus, the overbreadth doctrine's standing exception does not apply.

**B.  Ripeness**

IVGID's second challenge to Plaintiff's proposed amendment is that Plaintiff's claims challenging Policy 136 are not ripe for judicial review.  IVGID argues Plaintiff has not suffered an injury in fact fairly traceable to Policy 136.  Having concluded that Plaintiff has suffered such an injury in fact, the court likewise finds that Plaintiff has suffered an injury in fact sufficient to make his claims ripe for judicial review.

**C.  Failure to Join a Necessary and Indispensable Party**

Finally, IVGID challenges the motion to amend on the ground that Plaintiff has failed to join the 1968 property owners, who are necessary and indispensable parties.  For the same reasons discussed above regarding Ordinance 7, the court finds that the property owners are not necessary parties to Plaintiff's challenge to Policy 136.  Like the challenge to Ordinance 7, the challenge to Policy 136 does not directly implicate the property owners' rights under the restrictive covenant. Accordingly, the court finds that (1) it can grant complete relief in the property owners' absence, (2) the property owners' ability to protect their interest in the covenant will not be impaired or impeded,

25

and (3) IVGID will not be subject to a substantial risk of incurring multiple or inconsistent

obligations.

Having found that Plaintiff has standing to assert the challenges to Policy 136, that his

claims are ripe for judicial review, and that the 1968 property owners are not necessary parties to

Plaintiff's claims, the court likewise finds that Plaintiff's requested amendment to the complaint is

not futile.  In addition, Plaintiff does not seek the amendment in bad faith, and the amendment will

not cause IVGID undue delay or prejudice.  Accordingly, the court will grant Plaintiff's Motion for

Leave to File First Amended Complaint (#21).

**IV.    Conclusion**

To summarize, the court finds that Plaintiff has standing to bring his claims and that his

claims are ripe for judicial review.  To the extent that the motion to dismiss challenges Plaintiff's

claims on these grounds, the court will deny the motion to dismiss.

The court also finds that the 1968 property owners are not necessary parties to Plaintiff's

claims challenging Ordinance 7.  To the extent that the motion to dismiss challenges Plaintiff's

claims on this basis, the court will deny the motion to dismiss.

However, the court finds that the 1968 property owners are necessary parties to Plaintiff's

claims challenging the restrictive covenant.  Nonetheless, the court lacks the information necessary

to determine whether joinder of these parties is feasible.  Accordingly, the court will withhold ruling

on this aspect of the motion to dismiss and will grant Plaintiff additional time to submit

supplemental briefing discussing (1) whether joinder of the 1968 property owners is feasible and (2)

if joinder is not feasible, whether the 1968 property owners are indispensable under Federal Rule of

Civil Procedure 19(b).  Likewise, the court will grant Defendants additional time to respond to

Plaintiff's arguments.

The court also finds that Plaintiff's Motion for Leave to File a First Amended Complaint

(#21) is not sought in bad faith, does not cause IVGID undue delay or undue prejudice, and does not

constitute an exercise in futility.  Accordingly, the court will grant Plaintiff leave to file the first amended complaint.

Finally, in light of the important considerations regarding the rights of the 1968 property owners, the court will grant IVGID's Motion to Stay or Extend Briefing Schedule on Plaintiff's Motion for Preliminary Injunction (#13).

IT IS THEREFORE ORDERED that IVGID's Motion to Dismiss (#14) is hereby DENIED in part.

IT IS FURTHER ORDERED that Plaintiff is granted thirty (30) days from the filing of this order to file supplemental briefing concerning (1) whether joinder of the 1968 property owners is feasible and (2) if joinder is not feasible, whether the 1968 property owners are indispensable parties.

Defendants shall have twenty (20) days to respond, and Plaintiff shall have ten (10) days to reply to Defendants' response.

IT IS FURTHER ORDERED that IVGID's Motion to Stay or Extend Briefing Schedule on Plaintiff's Motion for Preliminary Injunction (#13) is hereby GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to File First Amended Complaint (#21) is hereby GRANTED.

IT IS SO ORDERED.

DATED this 9th day of February, 2009.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE